UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALINDA M. GANDARA, | Case No. 13-cv-487-L(WMC) |
| Plaintiff, | **ORDER GRANTING MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF ILLINOIS [DOC. 9]** |
| v. | |
| NESTLE PURINA PETCARE COMPANY, *et al.*, | |
| Defendants. | |

On March 4, 2013, Defendants Nestle Purina PetCare Company ("Purina") and Waggin' Train, LLC filed a motion to transfer this action to the Northern District of Illinois under to 28 U.S.C. § 1404(a). Plaintiff Rosalinda M. Gandara opposes.

The Court found this motion suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d.1). (Doc. 16.) For the following reasons, the Court **GRANTS** Defendants' motion to transfer this action to the Northern District of Illinois.

//

//

13cv487

## I. BACKGROUND

This is a consumer class action. (Compl. ¶ 1.) Plaintiff is a resident of California. (*Id.* ¶ 3.) Purina is a Missouri corporation with its principle place of business in St. Louis, Missouri. (*Id.* ¶ 4.) Waggin' Train is a Delaware limited liability company with its principle place of business in St. Louis, Missouri, and a wholly owned subsidiary of Purina. (*Id.* ¶ 5.) Defendants market and sell Waggin' Train® brand chicken jerky dog treats (hereinafter, "Chicken Jerky Treats") allegedly containing illegal antibiotics in the State of California. (*Id.* ¶ 8.)

Plaintiff had been purchasing the Chicken Jerky Treats for the past four years in Wal-Mart stores located in San Diego County. (Compl. ¶ 10.) The United States Federal Drug Administration ("FDA") investigated reports of dogs suffering from several maladies after consuming Chicken Jerky Treats and found that the products contained residue from antibiotics that Plaintiff believes cannot be sold without a prescription from a veterinarian. (*Id.* ¶ 12.) Additionally, Plaintiff alleges that some of these antibiotics are "not approved by the Federal Drug Administration for use in food animals[.]" (*Id.*) According to Plaintiff, she "suffered injury in fact by losing money as the result of her purchase of Waggin' Train® brand Chicken Jerky Products, which she would have not purchased had she known that they contained illegal antibiotics." (*Id.* ¶ 3.)

On January 25, 2013, Plaintiff initiated this action in the San Diego Superior Court. In her complaint, she alleges two causes of action: (1) Violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750; and (2) Violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200. On February 28, 2013, Defendants removed the action to this Court.

Defendants move to transfer this action to the United States District Court for Northern District of Illinois under 28 U.S.C. § 1404(a) where a consolidated, earlier-filed putative class litigation is pending. Plaintiff opposes.

//
//
//

## II.  LEGAL STANDARD

Section 1404(a) of Title 28 of the United States Code provides that even when venue is proper, the court has discretion to transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of this section is to "prevent the waste 'of time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26-27 (1960)). The party requesting the transfer bears the burden of showing that the balance of conveniences weighs heavily in favor of the transfer in order to overcome the strong presumption in favor of the plaintiff's choice of forum. *Piper Aircraft v. Reyno*, 454 U.S. 235, 255-56 (1981); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

To support a motion to transfer under § 1404(a), the moving party must first show the proposed transferee court possesses subject matter jurisdiction over the action, the parties would be subject to personal jurisdiction in the transferee court, and venue would have been proper in the transferee court. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *A.J. Indus., Inc. v. United States Dist. Ct. for the Cent. Dist. of Cal.*, 503 F.2d 384, 386 (9th Cir. 1974). Once this threshold requirement has been established, the Court next looks at whether the convenience of parties and witnesses, and the interests of justice favor transfer. 28 U.S.C. § 1404(a). In the Ninth Circuit, courts weigh several considerations when determining whether transfer is appropriate: (1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses and availability of compulsory process; (4) ease of access to the evidence; (5) feasibility of consolidation of other claims; (6) familiarity of each forum with the applicable law; (7) any local interest in the controversy; and (8) the relative court congestion and time to trial in each forum. *Decker Coal*, 805 F.2d at 843; *see Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000), *cert. denied*, 531 U.S. 928 (2000).

//
//

### III. DISCUSSION

Plaintiff does not contest whether this action could have initially been brought in the Northern District of Illinois, nor is there a dispute over subject matter jurisdiction and whether the parties would be subject to personal jurisdiction in the transferee court. Thus, Defendants readily satisfy the threshold requirement of showing that the action could have been originally brought in the Northern District of Illinois. *See Hoffman*, 363 U.S. at 344; *A.J. Indus.*, 503 F.2d at 386.

Defendants instead begin by arguing that the transfer should be granted in the interest of justice and for the convenience of the parties and witnesses. (Defs.' Mot. 11:19–19:8.) Plaintiff challenges these arguments. (Pl.'s Opp'n 4:22–9:4.) The Court addresses these issues below.

#### A. Possibility of Consolidation with Other Claims

"The pendency of related actions in the transferee forum is a significant factor in considering the interest of justice factor." *Jolly v. Purdue Pharma L.P.*, No. 05-CV-1452H, 2005 WL 2439197, at *5 (N.D. Cal. Oct. 19, 2010). Additionally, "[c]oncerns over judicial efficiency are paramount" when related actions are overlapping putative class actions. *Hawkins v. Gerber Prods. Co.*, No. 12-cv-465-MMA(JMA), 2013 WL 627066, at *3 (S.D. Cal. Feb. 20, 2013) (quoting *Johansson v. Cent. Garden & Pet Co.*, No. C 10-03771 MEJ, 2010 WL 4977725, at *2 (N.D. Cal. Dec. 2, 2010)).

The claims in the pending consolidated Northern District of Illinois class action seek to recover the price of the product. *See Adkins et al. v. Nestle Purina PetCare Company et al.*, No. 12-cv-2871 (N.D. Ill.). The *Adkins* plaintiffs argue that by offering the treats for sale as wholesome and safe for consumption, Purina falsely marketed the products to consumers. But here, Plaintiff seeks refunds for the Chicken Jerky Treat that she purchased based on Defendants' alleged unlawful business practices under California law, which she contends is substantially different from the fraudulent-sale claim made in the *Adkins* complaint and thus cannot be combined. At the core, these allegations are strikingly similar and will require much of the same discovery. Pet owners will not buy treats that contain prohibited substances just as they

would not buy treats that are marketed as safe, when they are in fact not fit for consumption.

Furthermore, the Northern District of California recently transferred a putative class action to the Northern District of Illinois that contains the same claims asserted in this action. *See Matin v. Nestle Purina PetCare Company, et al*. No. 12-cv-6465-THE (N.D. Cal.). Specifically, the *Matin* plaintiffs assert claims under California's CLRA and UCL, the same claims asserted by Plaintiff here, which Plaintiff conveniently overlooks in her attempt to distinguish the cases. The *Matin* plaintiffs' complaint also involves the same product for these violations. As a result of the overlap between this action and the Northern District of Illinois' consolidated action, which now includes claims for violations of California's CLRA and UCL, a transfer to the Northern District of Illinois would greatly reduce the cost of discovery and prevent inconsistent judgments. *See generally Van Dusen*, 376 U.S. at 616 (stating the purpose of § 1404(a) is to "prevent the waste of time, energy and money"); *see also Jolly*, 2005 WL 2439197, at *2.

Three similar cases against Defendants have already been consolidated and transferred—including two cases from the Northern District of California—and are currently pending in the Northern District of Illinois. This action similarly overlaps with the first-filed *Adkins* action. The products, core facts, and parties involved substantially overlap. Therefore, the Court finds that the transfer of this action to the Northern District of Illinois would serve the interest of justice by promoting judicial efficiency through consolidating pre-trial proceedings. *See Hawkins*, 2013 WL 627066, at *2.

**B.     Feasibility of Prejudicial Application of California Law**

Plaintiff contends that the Northern District of Illinois is ill-suited to interpret California law and that their attempt to do so will result in a prejudicial application. She is especially concerned with the "unique" nature of California's UCL. While "it seems logical that '[a] California district court is more familiar with California law than district courts in other states'. . . 'courts in [one state] are fully capable of applying [another state's] substantive law.'" *Hawkins*, 2013 WL 627066, at *5 (quoting *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal.

2011); *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1148 (C.D. Cal. 2009)). The Court does not find that this concern outweighs the benefits that would be gained by having similar issues adjudicated by the same court.

Consequently, Plaintiff's argument neglects the fact that several California actions have already been transferred to the Northern District of Illinois, so the court has already been familiarized with California law. The Northern District of California transferred the *Matin* action to the Northern District of Illinois, finding it capable of applying California law. This Court will follow the Northern District of California's decision and defer to the Northern District of Illinois.

### C. Convenience for the Parties and Witnesses

"The question of which forum will better serve the interest of justice is of predominant importance on the question of transfer, and the factors involving convenience of parties and witnesses are in fact subordinate." *Madani v. Shell Oil Co.*, No. C07-04296 MJJ, 2008 WL 268986, at *2 (N.D. Cal. Jan. 30, 2008) (quotation marks omitted); *see also Mussetter Distrib., Inc. v. DBI Beverage Inc.*, No. CIV 09-1442 WBS EFB, 2009 WL 1992356, at *6 (E.D. Cal. July 8, 2009). "[T]he court should consider private and public interest factors affecting convenience of the forum." *Decker Coal*, 805 F.2d at 843 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). Private factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Public factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest of having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft*, 454 U.S. at 251 n.6 (quoting *Gulf Oil Corp.*,

330 U.S. at 509).

It is highly unlikely that the alleged thousands of members of the putative class will provide witness testimony in Illinois or anywhere else as Plaintiff suggests. (*See* Pl.'s Opp'n 6:18–21.) Plaintiff's contention that Defendants will be inconvenienced also strains credulity. Defendants chose the Northern District of Illinois because they already face an action there and it is where many of the same required witnesses and documents for this case are currently located. (*Id.* at 6:21–7:4.) Defendants would not have chosen to request a transfer to the Northern District of Illinois if it would be a great inconvenience to them.

Moreover, any deference that Plaintiff is given for her choice of forum is substantially depleted since she brought her suit on behalf of a putative class. *See, e.g., Hawkins*, 2013 WL 627066, at *4. There are no other substantial ties to California that warrant denying the motion other than Plaintiff's initial purchase of the Chicken Jerky Treats, since discovery will be largely conducted outside of the state. Accordingly, the Court finds that the perceived inconvenience of the parties is insufficient to justify denying the transfer of venue. *See Van Dusen*, 376 U.S. at 622 (noting that it is the role of a court to balance § 1404(a) factors in a case-by-case basis to promote convenience and fairness).

## IV.   CONCLUSION AND ORDER

For the reasons set forth above, the Court **GRANTS** Defendants' motion to transfer venue. (Doc. 9.) The Clerk of the Court shall transfer this case to the Northern District of Illinois.

**IT IS SO ORDERED.**

DATED: June 3, 2013

M. James Lorenz
United States District Court Judge

COPY TO:
HON. WILLIAM MCCURINE, JR.
UNITED STATES MAGISTRATE JUDGE
ALL PARTIES/COUNSEL